IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JAMES TOLLE,                                    )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )      1:20-cv-363 (LMB/MSN)
                                                )
GOVERNOR RALPH NORTHAM, et al.,                 )
                                                )
            Defendants.                         )

<u>MEMORANDUM OPINION</u>

Before the Court is a Motion to Dismiss filed by defendants Governor Ralph Northam

and the Commonwealth of Virginia ("defendants"). [Dkt. No. 46]. Defendants' motion seeks

dismissal for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule

12(b)(6) of the Federal Rules of Civil Procedure. Because plaintiff James Tolle ("plaintiff" or

"Tolle") is proceeding <u>pro se</u>, defendants' motion was accompanied by a notice consistent with

Local Rule 7(K) and <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). Plaintiff has responded

to defendants' motion, and both sides have filed supplemental briefs. Also pending is plaintiff's

Motion for Preliminary Relief. [Dkt. No. 55].

The Court has considered all of the parties' submissions, including plaintiff's sur-reply

[Dkt. No. 52] and the supplemental briefing filed by both parties. [Dkt. Nos. 71 and 72] and

finds that oral argument will not assist the decisional process. For the reasons stated below,

defendants' Motion to Dismiss will be granted and plaintiff's Motion for Preliminary Relief will

be denied as moot.

## I. BACKGROUND

A. <u>Plaintiff's Complaint</u>

In response to the Covid-19 pandemic, defendant Governor Ralph Northam issued Executive Order Number Fifty-Five ("EO-55") on March 30, 2020, requiring individuals within the Commonwealth to stay at home, except as permitted by the order, and restricting the size of public and private in-person gatherings, including religious services. Temporary Stay at Home Order Due to Novel Coronavirus (Covid-19), Executive Order 55 (March 30, 2020) ("EO-55"). On April 1, 2020, plaintiff filed this civil action against the Commonwealth of Virginia and Governor Ralph Northam under 42 U.S.C. §1983 alleging that EO-55 violated his rights, as well as the rights of all "U.S. citizens within the Commonwealth of Virginia,"[1] under the First, Fourth, and Fourteenth Amendments of the United States Constitution. [Dkt. No. 1] at ¶ 1.

Tolle alleges that he was a resident of the Commonwealth of Virginia at all material times and that he "was a practicing member in lay ministry at his Church in Gainesville[,] Virginia until Defendant Northam's social distancing orders caused Tolle's Church to stop offering public services." [Dkt. No. 1] at ¶ 4-5. EO-55 required "all individuals in Virginia to remain in their place of residence and only allow[ed] individuals to leave their residences for the purpose of: obtaining essential services, seeking medical or other essential services . . . traveling to place[s] of worship, work or school . . . ." EO-55 also imposed a distancing requirement: "[t]o the extent individuals use shared or outdoor spaces . . . they must at all times maintain social distancing of at least six feet from any other person . . . ." <u>Id.</u> at ¶ 21-22. EO-55 further

---

[1] As a <u>pro se</u> litigant, plaintiff cannot represent the interests of anyone except himself. Therefore, to the extent his claims reference other individuals, these claims must be dismissed except with regard to Tolle.

2

prohibited "[a]ll public and private in-person gatherings of more than ten individuals" including "parties, celebrations, religious or other social events, whether they occur indoor or outdoor." Id. at ¶ 23. Violation of these restrictions was punishable as a "Class 1 misdemeanor pursuant to §44-146.17 of the Code of Virginia." Id. at ¶ 25.  Plaintiff alleges that EO-55 was "not based on a consensus of medical science about the modes of transmission of COVID-19," and that there was no scientific consensus regarding the ability of asymptomatic people to spread Covid-19, making the restrictions unwarranted. Id. at ¶¶ 14-18.

The complaint alleges four causes of action.  First, it alleges that EO-55 violated the free exercise clause of the First Amendment by prohibiting gatherings of ten or more people "explicitly including 'religious or other social events, whether they occur indoor or outdoor'" and by making "it a crime to exercise one's religion in violation of [the EO's] prohibitions." Id. at ¶ 30.  According to the complaint, EO-55 violated Tolle's free exercise rights because "Tolle's Church has already stopped offering public services because of Defendant Northam's orders." Id. at ¶ 31.

In his second cause of action, plaintiff alleges that EO-55 violated his First Amendment right to assemble by prohibiting gatherings of ten or more people and by requiring individuals who used shared or outdoor spaces to maintain social distancing of at least six feet from any other person.  According to the complaint, EO-55 "restrict[ed] the Constitutional rights of Tolle and other Virginians because his orders make it a crime for persons who express political opposition to Defendant Northam's actions to gather more than 10 persons in any place throughout the entire Commonwealth of Virginia to publicly express their political opposition." Id. at ¶ 43.

3

The third cause of action alleges that EO-55 violated the Fourth Amendment by restricting the number of unrelated people homeowners could host within their private homes [id. at ¶¶ 53-55], thereby "intend[ing] to intrude into the personal property and homes of United States citizens." Id. at ¶ 53.

Finally, the complaint alleges that EO-55 violated the Fourteenth Amendment by "depriving Tolle and other citizens of the liberty to travel to and conduct their religion, [and] . . . the liberty to travel outside their residences and to gather and assemble as they choose on their own property and . . . their right to have the liberty to do what they choose on their own property and . . . the free use of their own homes." Id. at ¶ 63. In each count, Tolle alleges that EO-55 had a disproportionate and/or unnecessary impact on healthy or asymptomatic people. Id. at ¶¶ 32, 44, 55, and 64.

Plaintiff's complaint seeks the following declaratory, injunctive, and monetary relief:

A.   A declaration delimiting the proper use of emergency powers which protect citizens' Constitutional rights and define the balance of protection of public health and safety and protection of individual rights;

B.   Permanent Injunctive relief which prevents the execution of the provisions of Defendants' orders under EO-55 which violate the United States Constitution;

C.   An order requiring Defendants' compliance with the Constitution of the United States, including requiring accommodation of the free exercise of religion in places of worship to the maximum extent possible;[2]

---

[2] Defendant Northam already is required to comply with the United States Constitution. Before taking office, the Governor of Virginia is required to "take or subscribe the following oath or affirmation: I do solemnly swear (or affirm) that I will support the Constitution of the United States, and the Constitution of the Commonwealth of Virginia . . . ." VA Const., art. II, §7.

D.  An order requiring the Commonwealth of Virginia's and any other State's[3] emergency orders related to COVID-19 to comply with the Constitution of the United States, including requiring accommodation of the free exercise of religion in places of worship to the maximum extent possible;

E.  Award of compensatory, general and special damages for Plaintiff according to proof at trial;

F.  Costs of suit, inclusive of reasonable attorneys' fees,[4] expert witness fees, and other litigation expenses pursuant to 42 U.S.C. § 1988;

G. Appropriate interest, costs and disbursements, and such other and further relief as the Court may deem proper.

[Dkt. No. 1] at 22-23.

On December 14, 2020, in response to the changing nature of the Covid-19 pandemic, Governor Northam issued Executive Order Number Seventy-Two (2020) and Order of Public Health Emergency Nine, Commonsense Surge Restrictions, Certain Temporary Restrictions Due to Novel Coronavirus (Covid-19) (December 10, 2020) ("EO-72").  In response to that new order, plaintiff submitted a proposed amended complaint as an attachment to his opposition to defendants' Motion to Dismiss.  [Dkt. No. 49-1].[5]  The amended complaint updated plaintiff's original allegations by adding new paragraphs 26-1 to 26-9, which incorporate references to EO-72.  Paragraphs 26-1 to 26-4 of the amended complaint quote extensively from EO-72, while Paragraphs 26-5 to 26-9 contain legal assertions regarding the effect of the executive order. See,

---

[3] Plaintiff named Governor Northam and the Commonwealth of Virginia as defendants in this civil action.  [Dkt. No. 1].  No other states are named as parties, and this Court does not have the power to enjoin other, non-party, states.

[4] As a pro se litigant, plaintiff has no basis for requesting attorneys' fees. See, e.g., Munvive v. Fairfax County Sch. Bd., 2019 WL 2374869 (E.D. Va. 2019) (holding that plaintiff is not entitled to recover attorneys' fees because pro se parties are not entitled to such expenses).

[5] Although plaintiff did not obtain permission to amend his complaint, the Court will treat the proposed amended complaint as if it were the operative complaint in deference to plaintiff's pro se status.

e.g., [Dkt. No. 49-1] at ¶ 26-6 ("Defendant Northam's orders under EO-72 which restrict the free

practice of religion and are universally applied to all persons in Virginia are not serving a

compelling government interest or are not narrowly tailored to serve any compelling government

interest") and ¶ 26-8 ("Defendant Northam's orders was/is a regulation, custom or usage which

causes Tolle and every United States citizen in Virginia to be deprived of his or her right to be

secure in their persons, houses, papers, and effects and violates the Fourth Amendment of the

United States Constitution").  The proposed amended complaint amended the Prayer for Relief

by inserting "EO-72 or any other similar Executive Order" after "EO-55" in Paragraph B of the

Prayer for Relief.  [Dkt. No. 49-1] at 27.

B.  Procedural History

        When he filed his original complaint, plaintiff also filed a Motion for Preliminary

Injunction and Expedited Hearing [Dkt. No. 3], in which he asked the Court to grant a

"Preliminary Injunction to stay the execution of all or parts of Defendant Northam's orders under

Executive Order 55 . . . and interim injunction or temporary restraining order . . . requiring

Defendants to publicly stay the execution of Defendant Northam's EO-55 and stop all

enforcement of such EO-55."  [Dkt. No. 3] at 1.  Plaintiff also moved the Court for an order

directing the U.S. Marshals Service to serve the complaint.  [Dkt. No. 2].  The motions were

promptly denied.  Citing General Order 2020-07, which postponed all in-person proceedings in

this district due to the novel coronavirus, the Court denied plaintiff's request for an expedited

hearing, and denied plaintiff's Motion for Preliminary Injunction, finding that "the only current

emergency is the one caused by the Coronavirus."  Finally, plaintiff's request that the U.S.

Marshals Service effect service on the defendants was denied on the ground that "[i]n these

exigent and extraordinary circumstances, putting members of the United States Marshals Service at risk to serve this complaint would be inappropriate." [Dkt. No. 5].

On April 13, 2020, plaintiff appealed the denial of his motions. [Dkt. No. 11]. As a result, all further action on plaintiff's complaint was stayed pending resolution of his appeal. [Dkt. No. 24]. On October 26, 2020, the Fourth Circuit dismissed plaintiff's appeal, finding that the order he appealed was "neither a final order nor an appealable interlocutory or collateral order." [Dkt. No. 38] (footnote omitted). After the Fourth Circuit issued its mandate, the stay was lifted on November 17, 2020. Defendants then filed the pending Motion to Dismiss.

In response to defendants' motion, plaintiff filed an opposition brief, to which he attached his proposed amended complaint containing allegations regarding Executive Order 72, which by then had replaced EO-55. [Dkt. No. 49-1]. After defendants filed a reply brief, plaintiff filed a Request to File Sur-reply [Dkt. No. 52] and noticed a hearing date to address his request to file a sur-reply. [Dkt. No. 53]. The Court granted plaintiff's motion to file a sur-reply without holding a hearing and determined that defendants' Motion to Dismiss would be decided on the pleadings. [Dkt. No. 54].

Plaintiff next filed the pending Motion for Preliminary Relief [Dkt. No. 55], asking the Court to enter a preliminary injunction "which enjoins Defendant Northam's Executive Orders from abridging Plaintiff's rights under the First Amendment . . . and Plaintiff's rights under the Fourth and Fourteenth Amendments," [Dkt. No. 55] at 3, and attaching a multi-paged Proposed Preliminary Injunction Order describing seven broad injunctions. [Dkt. No. 55-1]. Plaintiff again noticed a hearing. [Dkt. No. 58].

Having determined that argument would not aid the decisional process and that both parties' motions would be decided on the papers, an order was issued cancelling the hearing that

plaintiff had noticed. [Dkt. No. 59]. Plaintiff responded by filing another Notice of Appeal with regard to the cancellation of the hearing on his Motion for Preliminary Relief, [Dkt. No. 60], which resulted in this civil action again being stayed until plaintiff's appeal was resolved. The appeal was dismissed and the mandate issued on May 19, 2021. [Dkt. Nos. 65 and 69].

During the pendency of plaintiff's second appeal, defendant Governor Northam issued Executive Order 79,[6] which terminated Executive Order 72 and thereby ended all prior Covid-19 mitigation measures, including restrictions on in-person gatherings, effective May 28, 2021.

Upon receiving the mandate from the Fourth Circuit, the defendants were ordered to submit an updated brief in support of their Motion to Dismiss to explain the impact of EO-79 on the pending motions and plaintiff was allowed an opportunity to respond. [Dkt. No. 70]. The parties have completed their supplemental briefing and the Court has again determined that oral argument will not aid the decisional process. Accordingly, defendants' motion is now ripe for decision.

C.  The Executive Orders

On March 30, 2020, the Governor issued EO-55, the Temporary Stay at Home Order Due to Novel Coronavirus (Covid-19) about which plaintiff originally complained. EO-55 stated that it would remain in effect until June 10, 2020. Id. at 20. In fact, the stay at home order, the prohibition on gatherings of 10 or more, and many other provisions of EO-55 were revoked before the order expired, when Virginia began Phase One of its reopening plan and the Governor issued Executive Order 61 on May 8, 2020, allowing religious services to take place at "50% of

---

[6] Executive Order Seventy-Nine (2021) and Order of Public Health Emergency Ten, Ending of Commonsense Public Health Restrictions Due to Novel Coronavirus (Covid-19) (May 14, 2021) ("EO-79").

the lowest occupancy load on the certificate of occupancy of the room or facility in which the religious services are conducted"[7] and creating physical distancing, signage, and sanitation requirements for religious services. As conditions improved and Virginia "move[d] forward into Phase Three," Governor Northam issued Executive Order 67, which went into effect on July 1, 2020, and eliminated all numerical or percentage-based capacity restrictions for religious services but maintained physical distancing, signage, and sanitation requirements for religious services.[8] When Covid-19 case numbers began to increase again, Governor Northam issued EO-72 on December 14, 2020, which imposed a "modified stay at home order" and other restrictions and continued the physical distancing, signage, and sanitation requirements with minor modifications, but did not impose any new numerical or percentage-based capacity restrictions on religious services.

   As vaccinations against Covid-19 increased and infection rates declined in the Commonwealth, EO-79 was issued on May 14, 2021. EO-79 explains that "with vaccines now widely available—over three million Virginians are fully vaccinated and safe from serious illness or death caused by COVID-19—it is time to begin our new normal." EO-79 provided that "[a]ll individuals in the Commonwealth aged five and older should cover their mouth and nose with a mask in accordance with the Centers for Disease Control and Prevention guidance" and, as of

---

[7] Executive Order Number Sixty-One (2020) and Order of Public Health Emergency Three, Phase One Easing of Certain Temporary Restrictions Due to Novel Coronavirus (Covid-19), (May 8, 2020) ("EO-62").

[8] Executive Order Number Sixty-Seven (2020) and Order of Public Health Emergency Seven, Phase Three Easing of Certain Temporary Restrictions Due to Novel Coronavirus (Covid-19) (July 1, 2020) ("EO-67").

May 28, 2021, effectively terminated all other Covid-19 mitigations measures that had been imposed by prior executive orders, including physical distancing requirements.

## II. Analysis

Defendants have moved to dismiss the complaint under Fed R. Civ. P. 12(b)(1) and 12(b)(6). The Court applies similar standards of review for such motions. A Rule 12(b)(1) motion tests whether "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When determining whether a complaint will survive a motion under Rule 12(b)(1), "all facts alleged . . . are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id.

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a "plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). As defendants properly argue, a complaint must be more than speculative, and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks and citations omitted). When considering a motion to dismiss, a court must assume that the facts alleged in the complaint are true and resolve factual disputes in the plaintiff's favor, Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009); however, a court "is not bound by the complaint's legal conclusions," conclusory allegations, or unwarranted inferences. Id. Courts must "construe allegations in a pro se complaint liberally." Thomas v. Salvation Army So. Territory, 841 F.3d 632, 637 (4th Cir. 2016).

Without considering whether the complaint would have survived a motion to dismiss when it was filed, the Court concludes that it lacks subject-matter jurisdiction over this civil action because plaintiff's complaint has become moot. As the Fourth Circuit has explained:

> "[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011) (alteration in original) (internal quotation marks omitted) (*quoting United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)), which extends only to actual cases or controversies, U.S. Const. art. III, § 2. When a case or controversy ceases to exist—either due to a change in the facts or the law — "the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." S.C. Coastal Conservation League, 789 F.3d at 482. Put differently, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017).

As described above, plaintiff alleges that by enacting EO-55 (and EO-72, as reflected in his proposed amended complaint), defendants violated his rights under the United States Constitution by limiting the size of public and private in-person gatherings in general and by limiting the number of people permitted to gather for religious services, among other restrictions. The record shows that Virginia removed the numerical and percentage-based capacity restrictions for religious services in July 2020, when EO-67 became effective, and at no time since July 2020 have the defendants reimposed any numerical or percentage-based capacity limitations on religious services, other than requiring "proper physical distancing." EO-72 at ¶ II(B)(1)(b)(i). Indeed, even during the rise in Covid-19 cases in December 2020, when the Governor issued a Modified Stay at Home Order in EO-72 and imposed limits on the size of other public gatherings, there were no numerical capacity limits imposed on religious services. Moreover, as vaccines became increasingly available and the spread of Covid-19 in Virginia

11

slowed, defendants loosened and eventually removed all Covid-19 mitigation measures required by previous executive orders.

In response to defendants' assertion that this civil action is moot, plaintiff argues that the defendants have failed to satisfy their burden under Supreme Court precedent of showing that "the challenged conduct cannot reasonably be expected to recur." [Dkt. No. 72] at 8, (quoting Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc., 528 U.S. 167, 189 (2000). According to the plaintiff, "[e]ven if the Court accepts Defendants' arguments concerning the likelihood of new capacity restrictions on religious services, Defendants provide no reason for the Court to believe that the multiple other constitutional violations of Defendants' COVID orders will not be re-instituted in the future due to a resurgence of COVID-19 or during a pandemic caused by another novel virus." Id. at 5. Plaintiff relies heavily on the Supreme Court's decision in Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020) to support his argument that this civil action is not moot.

In the Dioceses of Brooklyn case, the Supreme Court considered an application for a temporary restraining order enjoining enforcement of the governor of New York's Executive Order that

> impose[d] very severe restrictions on attendance at religious services in areas classified as "red" or "orange" zones. In red zones, no more than 10 persons [could] attend each religious service and in orange zones, attendance [was] capped at 25. . . . In a red zone, while a synagogue or church [could] not admit more than 10 persons, businesses categorized as "essential" [could] admit as many people as they wishe[ed]   And the list of "essential" businesses include[d] things such as acupuncture facilities, camp grounds, garages . . . . The disparate treatment is even more striking in an orange zone.  While attendance at houses of worship is limited to 25 persons, even non-essential businesses may decide for themselves how many persons to admit.

Id. at 66.  Because the New York Executive Order was "not neutral and of general applicability,"

the Supreme Court applied the strict scrutiny standard, which requires that the restrictions be

narrowly tailored to serve a compelling state interest.  Id. at 67.  Stating that "[s]temming the

spread of COVID-19 is unquestionably a compelling interest," the Supreme Court held that the

New York restrictions were not narrowly tailored because, among other reasons, the restrictions

were "far more restrictive than any COVID-related regulations that have previously come before

the Court."  Id.

By the time the case was before the Supreme Court, the State of New York had

reclassified the zones in which the plaintiffs' houses of worship were located from orange to

yellow, which allowed the plaintiffs to hold worship services at 50% of their maximum capacity.

Id. at 68.  The Supreme Court held that the reclassification of plaintiffs' zones did not eliminate

the need for an injunction because

> the applicants remain under a constant threat that the area in question will be
> reclassified as red or orange . . . the Governor regularly changes the classification
> of particular areas without prior notice.  If that occurs again, the reclassification
> will almost certainly bar individuals in the affected areas from attending services
> before judicial relief can be obtained.

Id. at 69 (noting that plaintiffs hold daily worship services).

Defendants argue that this civil action is easily distinguishable from Diocese of Brooklyn

and is more aligned with the Supreme Court's decision denying an application for a preliminary

injunction against enforcement of an executive order that was about to expire in Danville

Christian Academy, Inc. v. Beshear, 141 S. Ct. 527 (2020).  In Danville Christian Academy, the

Supreme Court declined to intervene in the Governor of Kentucky's order that K-12 schools in

that state remain closed from November 18, 2020 to January 4, 2021.  The Supreme Court issued

its opinion on December 17, 2020, stating: "Under all the circumstances, especially the timing and the impending expiration of the Order, we deny the application without prejudice to the applicants or other parties seeking a new preliminary injunction if the Governor issues a school-closing order that applies in the new year." Id. at 528.  Plaintiff attempts to distinguish Danville Christian Academy from this civil action by arguing that the Governor of Kentucky had made public statements indicating "his intention to re-open schools just days before the Supreme Court's review of the case," [Dkt. No. 72] at 9, but such statements were not relied on by the Supreme Court in reaching its decision.  This Court agrees with the defendants that this civil action is more like Danville Christian Academy than Diocese of Brooklyn.

Unlike the restrictions at issue in Diocese of Brooklyn, which were still in place when the Supreme Court considered the plaintiffs' application, the Executive Orders about which Tolle complains have been rescinded and there is no indication that the defendants will adopt new restrictions.  Moreover, the Supreme Court issued its decision in Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020), in November 2020, at a time when Covid-19 was rampant in the United States and the U.S. Food and Drug Administration had not yet approved a vaccine for Emergency Use Authorization.[9]  Because the Roman Catholic Diocese of Brooklyn case was decided within a very different public health context than currently exists in Virginia, in addition to the fact that the New York order was still in effect while the Virginia order has been rescinded, the Supreme Court's holding that the case was not moot because "the applicants remain under a constant threat that the area in question will be reclassified as red or orange," id.

---

[9] The Pfizer-Biontech vaccine was granted Emergency Use Authorization on December 11, 2020. https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine

14

at 68, has no bearing on this civil action.  Unlike the plaintiffs in <u>Roman Catholic Diocese of</u> <u>Brooklyn</u>, Tolle does not remain under a threat that the defendants will reinstate the restrictions about which he complained.

A recent opinion by the Fourth Circuit further supports defendants' argument that plaintiff's complaint is moot.  In <u>American Federation of Government Employees v. Office of</u> <u>Special Counsel</u>, 1 F.4th 180 (4th Cir. 2021), the Fourth Circuit considered a challenge to an Office of Special Counsel ("OSC") advisory opinion regarding the application of the Hatch Act to certain conduct during the 2020 election.  After the district court ruled and before the case reached the Fourth Circuit, the Office of Special Counsel withdrew the challenged opinion because the 2020 election had already occurred.  Explaining that because the OSC guidance was no longer in effect it "can no longer govern the appellants' conduct or in any way chill their proposed speech.  Such would seem to present a classic case of mootness." <u>Id.</u> at 187.  Moreover, the Fourth Circuit rejected the argument that the case was not moot because the alleged violation might be repeated, explaining that it was not reasonable to expect that the "same complaining party will be subjected to the same action again" because "there is no whiff of any of the opportunism, on the part of the defendant, that typically supports invocations of mootness exceptions where voluntary cessation of the challenged conduct is at issue," noting that the defendant withdrew its guidance because of changed circumstances (the election had occurred), "not with the aim of avoiding judgment in court." <u>Id.</u> at 187-88.

Like the Office of Special Counsel, the defendants in this civil action ended all Covid-related restrictions in response to changed circumstances.  In announcing the end of Virginia's Covid-19 mitigation measures, Governor Northam stated "Virginians have been working hard,

and we are seeing the results in our strong vaccine numbers and dramatically lowered case counts. . . . That's why we can safely move up the timeline for lifting mitigation measures in Virginia." Press Release dated May 14, 2021, https://www.governor.virginia.gov/newsroom/all-releases/2021/may/headline-895235-en.html. Moreover, on June 21, 2021, Governor Northam announced that 70% of adults in Virginia had received at least one Covid-19 vaccine dose. See Press Release dated June 21, 2021, https://www.governor.virginia.gov/newsroom/all-releases/2021/june/headline-897920-en.html. New daily cases averaged above 5,900 in early January 2021, and were under 250 by June 1. Id. This dramatic change in circumstances reflects the significant efforts by defendants and others to prevent a resurgence of Covid-19, making the need to re-impose the capacity restrictions unlikely and supporting defendant's argument that this civil action is moot. There is simply neither the "whiff of any opportunism"[10] by Governor Northam to suggest that he rescinded the Covid restrictions in response to this civil action nor "the constant threat"[11] that defendants will reimpose the complained of restrictions.

Having found that this civil action is moot, the Court therefore lacks subject matter jurisdiction and need not address the sovereign immunity arguments raised by the defendants; however, in civil actions asserting claims similar to Tolle's, other judges in this district have held that the doctrine of sovereign immunity bars such claims. See Lighthouse Fellowship Church v. Northam, 2021 WL 302446, — F. Supp. 3d — (E.D. Va. 2021) (dismissing church's challenge to executive orders imposing Covid-19 mitigation measures because Governor Northam is immune from suit); Tigges v. Northam, 473 F. Supp. 3d 559 (E.D. Va. 2020)

---

[10] Am. Fed'n of Gov't. Emp., 1 F.4th at 188.

[11] Roman Catholic Diocese of Brooklyn, 141 S. Ct. at 68.

16

(denying business owner's request for preliminary injunction enjoining enforcement of Covid-19 related executive orders because state officers have sovereign immunity).

## III. Conclusion

For the reasons stated above, defendants' Motion to Dismiss [Dkt. No. 46] will be GRANTED and plaintiff's Motion for Preliminary Relief [Dkt. No. 55] will be DENIED by an order that will accompany this Memorandum Opinion.

Entered this 29 day of July, 2021.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

17